UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BEN LEE,

            Petitioner,

    v.

MACOMBER,

            Respondent.

No.  2:  14-cv-1667 KJM KJN P

<u>ORDER & FINDINGS & RECOMMENDATIONS</u>

Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This action is proceeding on the original petition filed July 2, 2014, pursuant to the mailbox rule.  (ECF No. 1.)  Petitioner challenges his 2009 conviction for attempted first degree murder on the following grounds:  1) ineffective assistance of counsel; 2) malicious prosecution; and 3) prosecutorial misconduct.  (<u>Id.</u>)

Pending before the court is respondent's motion to dismiss on grounds that this action is barred by the statute of limitations.  (ECF No. 13.)  For the following reasons, the undersigned recommends that respondent's motion be granted.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  This statute of limitations provides that,

////

1

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody, pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244 (d)(1).

On May 23, 2012, the California Supreme Court denied petitioner's petition for review. (Respondent's Lodged Document 4.)  Petitioner's conviction became final 90 days later on August 21, 2012.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (explaining that a judgment becomes final upon the expiration of the 90–day period in which a petitioner may seek certiorari from the United States Supreme Court, regardless of whether the petitioner actually seeks such review).  Therefore, the one-year limitations period commenced the next day, August 22, 2012, and expired one year later, on August 21, 2013.  See Patterson v. Stewart, 251 F.3d 1243, 1245–47 (9th Cir. 2001) (the AEDPA limitations period begins to run on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)).  The instant action, filed July 2, 2014, is not timely unless petitioner is entitled to statutory or equitable tolling.

Statutory Tolling

Section 2244(d)(2) provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C. § 2244(d)(2).  Generally, this means that the statute of limitations is tolled during the time after a state habeas petition has been filed, but before a decision has been rendered.  Nedds v. Calderon, 678 F.3d 777, 780 (9th

2

1   Cir. 2012).  However, "a California habeas petitioner who unreasonably delays in filing a state

2   habeas petition is not entitled to the benefit of statutory tolling during the gap or interval

3   preceding the filing."  Id. at 781 (citing Carey v. Saffold, 536 U.S. 214, 225–27 (2002)).

4   Furthermore, the AEDPA "statute of limitations is not tolled from the time a final decision is

5   issued on direct state appeal and the time the first state collateral challenge is filed because there

6   is no case 'pending' during that interval."  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999),

7   overruled on other grounds by Carey, 536 U.S. at 214.  Thus, "[t]he period between a California

8   lower court's denial of review and the filing of an original petition in a higher court is tolled—

9   because it is part of a single round of habeas relief—so long as the filing is timely under

10  California law."  Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010).

11         Generally, a gap of 30 to 60 days between state petitions is considered a "reasonable time"

12  during which the statute of limitations is tolled, but six months is not reasonable.  Evans v.

13  Chavis, 546 U.S. 189, 210 (2006) (using 30 to 60 days as general measurement for

14  reasonableness based on other states' rules governing time to appeal to the state supreme court);

15  Carey, 536 U.S. at 219 (same); Waldrip v. Hall, 548 F.3d 729, 731 (9th Cir. 2008) (finding that

16  six months between successive filings was not a "reasonable time").

17         Petitioner filed the following state habeas petitions.  Pursuant to the mailbox rule, on

18  August 7, 2013, petitioner filed a habeas corpus petition in the Sacramento County Superior

19  Court.[1]  (Respondent's Lodged Document 5.)  On September 12, 2013, the Superior Court denied

20  this petition.  (Respondent's Lodged Document 6.)  Pursuant to the mail box rule, on November

21  25, 2013, petitioner filed a habeas corpus petition in the California Court of Appeal.

22  (Respondent's Lodged Document 7.)  On January 2, 2014, the California Court of Appeal denied

23  this petition.  (Respondent's Lodged Document 8.)  Pursuant to the mailbox rule, on February 18,

24  2014, petitioner filed a habeas corpus petition in the California Supreme Court.  (Respondent's

25
26  [1]   In the motion to dismiss, respondent states that, pursuant to the mailbox rule, petitioner filed
his petition in the Superior Court on August 11, 2013.  Although the proof of service is dated
27  August 7, 2013, petitioner signed the petition on August 11, 2013.  Giving petitioner the benefit
of the doubt, and assuming that petitioner erred with respect to the date he signed the petition, the
28  undersigned finds that petitioner filed the petition on the date he signed the proof of service.

1  Lodged Document 9.)  On May 14, 2014, the California Supreme Court denied this petition.

2  (Respondent's Lodged Document 10.)

3      Respondent concedes that petitioner is entitled to statutory tolling for the 36 days his

4  petition was pending in the Sacramento County Superior Court, i.e., from August 7, 2013, to

5  September 12, 2013.  Adding 36 days to August 21, 2013, extended the limitations period to

6  September 26, 2013.

7      Respondent argues that petitioner is not entitled to interval tolling for the time between the

8  denial of the first and second state habeas petition.  Respondent argues that petitioner

9  unreasonably delayed by waiting 73 days once his first state petition was denied before filing his

10  second state petition.  As discussed above, a gap of 30 to 60 days between state petitions is

11  generally considered a "reasonable time" during which the statute of limitations is tolled.  Evans

12  v. Chavis, 546 U.S. 189, 210 (2006).  The undersigned agrees with respondent that 73 days,

13  although not significantly longer than 60 days, constitutes an unreasonable delay.  See Livermore

14  v. Sandor, 2012 WL 2513951, * 1 (9th Cir. 2012) (concluding that delay of 76 days between state

15  habeas petitions was unreasonable); Velasquez v. Kirkland, 639 F.3d 964, 968 (9th Cir. 2011)

16  (finding delays of 81and 91days were unreasonable); Stancle v. Clay, 692 F.3d 948, 956 (9th Cir.

17  2012) (finding 82 day delay unreasonable).

18      Because petitioner is not entitled to interval tolling for the time between the denial of his

19  petition by the Superior Court and when he filed his petition in the California Court of Appeal,

20  the limitations period ended on September 26, 2013.  Therefore, petitioner is not entitled to

21  statutory tolling for the time his habeas petitions were pending in the California Court of Appeal

22  and California Supreme Court because they were filed after the statute of limitations expired.  See

23  Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).

24      In conclusion, the instant action is not timely because it was filed well after the statute of

25  limitations expired on September 26, 2013.

26      The undersigned further observes that even if petitioner was granted statutory tolling for

27  the entire time his state petitions were pending, the instant action would not be timely.

28  Petitioner's state petitions were pending from August 7, 2013, to May 4, 2014, i.e., 270 days.

1  Including these days in the limitations period would mean that the statute of limitations ran on

2  May 18, 2014.  The instant action, filed July 2, 2014, is still not timely.

3         Equitable Tolling

4       The one year statute of limitations for filing a habeas petition may be equitably tolled if

5  extraordinary circumstances beyond a prisoner's control prevent the prisoner from filing on time.

6  See Holland v. Florida, 560 U.S. 631, 645 (2010).  A petitioner seeking equitable tolling must

7  establish two elements:  "(1) that he has been pursuing his rights diligently, and (2) that some

8  extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

9       In his opposition to the pending motion, petitioner argued that he was entitled to equitable

10  tolling.  (ECF No. 14.)  Petitioner claimed that he was entitled to equitable tolling because of

11  mental illness.  Petitioner stated that he had to find someone to assist him with his legal work due

12  to mental illness.  Petitioner attached a declaration from inmate Hampton stating that inmate

13  Hampton helped petitioner with his legal work due to petitioner's mental illness.

14       In his opposition, petitioner also argued that he was entitled to equitable tolling because he

15  was housed in administrative segregation  ("ad seg") where he could not find any inmate to help

16  him with his legal work and because he was without access to his "legal work."

17       On April 27, 2015, the undersigned ordered petitioner to file further briefing in support of

18  his claim of equitable tolling.  (ECF No. 15.)  In this order, the undersigned observed that

19  petitioner did not specifically address how his mental illness prevented him from filing a timely

20  federal petition.  (Id. at 2.)  Petitioner did not describe his mental illness and why he could not

21  prepare his own documentation.  (Id.)

22       The undersigned also observed that petitioner did not specifically address how his

23  placement in ad seg prevented him from filing a timely federal petition.  (Id.)  Petitioner did not

24  describe the dates when he was housed in ad seg.  (Id.)  Petitioner also did not address why he

25  could not obtain assistance from other inmates while housed in ad seg.  (Id.)  It was also unclear

26  whether petitioner was alleging that he was being denied access to his legal property while

27  housed in ad seg.  (Id.)  Accordingly, the parties were directed to file further briefing addressing

28  equitable tolling.  (Id.)  On September 3, 3015, petitioner filed his further briefing.  (ECF No. 21.)

On October 5, 2015, petitioner filed a supplement to his further briefing.  (ECF No. 24.)  On

October 20, 2015, respondent filed his further briefing.  (ECF No. 28.)

*Mental Illness*

The Ninth Circuit has articulated a specific, two-part test for an equitable tolling claim

based on a petitioner's mental impairment:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable to rationally or factually understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (citations omitted)(italics in original);

see also Orthel v. Yates, 795 F.3d 935, 938 (9th Cir. 2015) ("A petitioner seeking equitable

tolling on the grounds of mental incompetence must show extraordinary circumstances, such as

an inability to rationally or factually personally understand the need to timely file, or a mental

state rendering an inability personally to prepare a habeas petition and effectuate its filing.").

Bills provides guidance for applying its two-part test:

> [T]o evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Bills, supra, 628 F.3d at 1100–01.

A petitioner alleging a severe mental impairment during the filing period is not entitled to

an evidentiary hearing unless he or she makes "a good faith allegation that would, if true, entitle

6

1    him to equitable tolling." Laws v. Lamarque, 351 F.3d 919, 921 (9th Cir. 2003) (remanding for

2    consideration of whether the petitioner's delayed filing was "attributable to psychiatric

3    medication which deprived Petitioner of any kind of consciousness" where the petitioner had

4    demonstrated "evidence of serious mental illness" by attaching prison psychiatric and medical

5    records); see Bills, supra, 628 F.3d at 1099–1100 (remanding where the petitioner was in the

6    lowest percentile for verbal IQ, verbal comprehension and working memory, and, according to

7    clinical psychologists, was incapable of inferential thinking necessary to complete a federal

8    habeas form); see also Orthel, supra, 795 at 939-40 ("Where the record is amply developed, and

9    where it indicates that the petitioner's mental incompetence was not so severe as to cause the

10   untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings

11   to further develop the factual record, notwithstanding a petitioner's allegations of mental

12   incompetence.") (quoting Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010).)

13        In his further briefing, petitioner alleges that he suffers from a mental illness, for which he

14   is being treated with psychotropic medication.  (ECF No. 21 at 7.)  In support of this claim,

15   petitioner attaches to his pleading a copy of a document titled "Rules Violation Report:  Mental

16   Health Assessment Request."  (Id. at 16.)  This document, dated January 21, 2014, indicates that

17   on January 14, 2014, petitioner was charged with fighting.  (Id.)  This document indicates that

18   petitioner is in the "CCCMS" mental health program.  (Id.)  This document also states that

19   petitioner has a "depressive" condition for which he receives psychotropic medication.  (Id.)

20        On October 20, 2015, respondent filed further briefing addressing petitioner's claims for

21   equitable tolling.  Respondent argues that petitioner is not entitled to equitable tolling based on

22   mental illness.  On October 19, 2015, respondent lodged petitioner's mental health records for the

23   time period of May 23, 2012, to July 2, 2014.  (Respondent's lodged document 11.)  The

24   undersigned summarizes these records herein.

25        On November 1, 2012, plaintiff was seen by Dr. Lidge.  (Respondent's Lodged document

26   11 at 2.)  Petitioner stated that his grandmother died of cancer on Monday.  (Id.)  She had raised

27   him since he was nine years old when his mom died.  (Id. at 2.)  Petitioner had increasing

28   depression, sleep disturbance, poor appetite, low energy, but was not suicidal.  (Id.)  Petitioner's

1    cognition and memory were described as "grossly intact," and his mood as "depressed." (<u>Id.</u>)

2    Petitioner reported "brief [auditory hallucinations] of noises that are minimal if cell isn't with

3    him." (<u>Id.</u>) Petitioner was prescribed Zoloft. (<u>Id.</u> at 3.)

4         On November 7, 2012, petitioner was seen by H. Stabbe, PhD. (<u>Id.</u> at 4.) Dr. Stabbe

5    wrote that petitioner stated that the antidepressant was not working. (<u>Id.</u>) Dr. Stabbe wrote that

6    petitioner's thoughts were organized and goal directed, "no delusional ideation. Mood slightly

7    depressed. Affect appropriate. Judgment and insight fair." (<u>Id.</u>) Dr. Stabbe stated that petitioner

8    would be admitted to the Correctional Clinical Case Management System ("CCCMS"). (<u>Id.</u>)

9    Petitioner's Test of his Adult Basic Eductation ("TABE"), as noted in the entry from this date was

10   9.4., meaning at the 9th grade, fourth month level. (<u>Id.</u>) Petitioner's Global Assessment of

11   Functioning ("GAF") score was 57, meaning that he had moderate symptoms. (<u>Id.</u>, Respondent's

12   Lodged Document 12 (document describing GAF definition).)

13        On December 1, 2012, Dr. Lidge saw petitioner.[2] (<u>Id.</u> at 11.) He wrote that petitioner

14   reported that the Zoloft 100 mg was helping with sleep, appetite and energy but he still needed to

15   process the death of his grandmother. (<u>Id.</u> at 11.) Dr. Lidge wrote that petitioner's cognition and

16   memory were grossly intact and that his mood was less depressed "but some appropriate grief."

17   (<u>Id.</u>) Dr. Lidge wrote that petitioner's affect was "more engaging," and that his thought stream

18   was "well connected." (<u>Id.</u>) Dr. Lidge wrote that petitioner was without hallucinations or

19   psychosis. (<u>Id.</u>)

20        On December 19, 2012, Dr. Lidge saw petitioner. He wrote that petitioner was grieving

21   his grandmother, felt that the medication was working, was not too stressed and able to cope. (<u>Id.</u>

22   at 13.) Dr. Lidge wrote that petitioner's cognition and memory were grossly intact, his mood was

23   less depressed but some appropriate grief about his grandmother, his affect was more engaging,

24   and his thought stream was well connected. (<u>Id.</u>)

25   ////

26   _____

27   [2]   As noted by respondent, it appears that the December 1, 2012 report was mistakenly dated
     November 1, 2012. (Respondent's Lodged Document 11 at 11.) The mistake is evidenced by the
     fact that petitioner's grandmother was noted to have passed away on October 22, 2012, and the
28   report notes that petitioner's grandmother had passed away "a month ago." (<u>Id.</u> at 11.)

On January 14, 2013, petitioner saw a CCCMS staff psychologist.  (Id. at 15.)  The notes from this exam stated that petitioner spoke of his uncle being in the hospital with advanced stomach cancer.  (Id.)  Petitioner did not know if his uncle would make it.  (Id.)  Petitioner stated that he was stressed and unable to sleep.  (Id.)  Petitioner stated that Zoloft was helping along with working out.  (Id.)  The notes also state that petitioner's thoughts were "organized and goal directed, no delusional ideation, mood mildly to moderately depressed, affect appropriate, judgment and insight good."  (Id.)  Petitioner's GAF score had increased to 65, meaning that petitioner had some mild symptoms.  (Id.; respondent's lodged document 12.)

On February 8, 2013, petitioner was seen by a CCCMS staff psychologist.  (Id. at 16.) The notes from this exam state that petitioner reported that he was sleeping better and still taking Zoloft.  (Id.)  Petitioner also reported that he was trying to get a certificate in word for computer, getting more into his five year old son's life, and reported that his appeal to overturn his sentence was "looking good."  (Id.)  The exam notes stated that petitioner's thoughts were "organized and goal directed, no delusional ideation, mood euthymic, affect appropriate, judgment and insight good."  (Id.)

On February 13, 2013, Dr. Lidge saw petitioner.  (Id. at 18.)  Dr. Lidge's notes state that petitioner stated that he was doing much better with the Zoloft, getting family support, and that he would have negative thoughts but they did not stick.  (Id.)

On May 6, 2013, Dr. Lidge saw petitioner.   (Id. at 20.)  Dr. Lidge stated that petitioner reported that the Zoloft was "working excellently."  (Id.)  Petitioner stated that his sleep and appetite were good, but he sometimes had some low energy.  (Id.)  Dr. Lidge wrote that petitioner's cognition and memory were grossly intact, his affect was engaging, his thought stream was well connected, and that he had no hallucinations or psychosis.  (Id.)

On August 7, 2013, Dr. Lidge saw petitioner.  (Id. at 22.)  Petitioner stated that he had just found out that his cousin died.  (Id.)  Petitioner wanted to discuss his feelings about the loss of another family member. (Id.)  After doing that for a few minutes, petitioner stated that he felt better and was ready to go back to his cell.  (Id.)  Dr. Lidge wrote that petitioner's cognition and memory were grossly intact, his mood expressed "some appropriate grief," his thought stream

1     was well connected, and that he had no hallucinations or psychosis.  (Id.)

2         On October 7, 2013, petitioner was seen by a CCCMS psychologist.  (Id. at 24.)  The

3 notes from this exam state that petitioner reported no depression, that he was trying to get a

4 certificate in Microsoft Office, and that the Zoloft was upsetting his stomach.  (Id.)  The notes

5 state that petitioner's thoughts were organized and goal directed, no delusional ideation, mood

6 euthymic, affect appropriate and judgment and insight were good.  (Id.)  Petitioner's GAF

7 remained at 65.  (Id.)

8         On October 13, 2013, petitioner saw Dr. Lidge.  (Id. at 25.)  Petitioner told Dr. Lidge that

9 he was "blessed" and doing all right.  (Id.)  Petitioner stated that his sleep and appetite had been

10 good, his mood was even, and he was going back to school to learn Microsoft programming.  (Id.)

11 Dr. Lidge wrote that petitioner's cognition and speech were grossly intact, his affect engaging,

12 and his thought stream was well connected.  (Id.)

13         On November 4, 2013, petitioner saw Dr. Lidge.  (Id. at 27.)  Petitioner reported that the

14 dose of Zoloft he was taking was working well, and his sleep, appetite and concentration were

15 "excellent."  (Id.)  Dr. Lidge wrote that petitioner's cognition and speech were grossly intact, his

16 affect engaging, and his thought stream was well connected.  (Id.)

17         On January 13, 2014, petitioner was seen by S. Hewitt, PhD.  (Id. at 36.)  Dr. Hewitt

18 wrote that petitioner reported that his sleep was o.k., his appetite was good, and that he had

19 "excellent concentration."  (Id.)  Dr. Hewitt's notes state that petitioner's own program included

20 exercise, reading, computer class, meditation, reading the Bible, watching television and letter

21 writing.  (Id.)  The notes also state that petitioner reported that he was working on his appeal and

22 has a positive attitude.  (Id.)  Dr. Hewitt wrote that petitioner was alert, his grooming and

23 behavior were appropriate, and his insight and judgment were good.  (Id.)

24         Other records from that time period indicate that petitioner refused to take Zoloft.  (Id. at

25 37 (entry from January 17, 2014 stating that petitioner refused to take Zoloft for three consecutive

26 days).)

27         Petitioner saw Dr. Soliman on January 30, 2014.  (Id. at 42.)  Petitioner reported that he

28 was still depressed but that Zoloft was making him throw up and giving him stomach problems.

1   (<u>Id.</u>)  The notes also state that petitioner had just had an incident of fighting due to his depression.

2   (<u>Id.</u>)  Petitioner stated that his mood was stable, his sleep was poor and his appetite was bad.  (<u>Id.</u>)

3   Dr. Soliman wrote that petitioner appeared "stable at baseline.  Custody reports no behavioral

4   issues."  (<u>Id.</u>)

5        Petitioner saw Dr. Soliman on March 24, 2014.  (<u>Id.</u> at 44.)  At this exam, petitioner

6   reported that he was "doing great on the Remeron.  I have been ok."  (<u>Id.</u>)

7        On April 14, 2014, petitioner saw Dr. Hewitt.  (<u>Id.</u> at 46.)  Petitioner reported that his

8   sleep was "ok," his appetite was "good," variable moods and "good energy."  (<u>Id.</u>)  Dr. Hewitt's

9   notes again describe petitioner's program which includes exercising, computer class, reading the

10  Bible, watching television, doing legal work and writing letters.  (<u>Id.</u>)  Dr. Hewitt wrote that

11  petitioner was "alert, grooming and behavior appropriate, thoughts directed…" (<u>Id.</u>)

12       On June 16, 2014, petitioner saw Dr. Soliman.  (<u>Id.</u> at 47.)  Petitioner reported, "I am

13  doing ok.  I don't have issues."  (<u>Id.</u>)  Petitioner reported that he had been taking Remeron and

14  was not depressed.  (<u>Id.</u>)  Petitioner "admits to current depressed mood, anhedonia and paranoia.

15  His mood has been stable and sleep is poor and appetite is bad, no significant behavioral issues

16  during the session."  (<u>Id.</u>)

17       After carefully considering the record, for the reasons stated herein, the undersigned finds

18  that petitioner is not entitled to equitable tolling based on mental illness.  Petitioner has not

19  demonstrated that he suffered from a mental impairment during the limitations period that

20  rendered him unable to rationally or factually understand the need to timely file his federal

21  petition or that rendered him unable to prepare his federal petition.

22       As discussed above, with statutory tolling, the one year limitations period began to run on

23  September 26, 2012.  After petitioner's grandmother passed away on October 22, 2012, he began

24  to suffer from depression.  The medical records indicate that petitioner first reported feeling

25  better, because of taking Zoloft, when he saw Dr. Lidge on December 1, 2012.  The records

26  indicate that petitioner felt better, and that the depression was adequately managed, until January

27  2014 when he stopped taking Zoloft because it hurt his stomach.  By March 2014, petitioner's

28  depression was adequately managed because he had been prescribed Remeron.

1    When petitioner filed his first state habeas on August 7, 2013, the medical records

2 demonstrate that his depression had been adequately managed for approximately eight months.

3 The entries in petitioner's mental health records for the eight months preceding the time he filed

4 his first state habeas petition contain no indication that petitioner was unable to file a habeas

5 petition in either state or federal court.  For example, the entry by the CCCMS staff psychologist

6 on January 2013 states that petitioner's thoughts were "organized and goal directed."  In February

7 2013, petitioner reported that he was trying to get a certificate in "Word for computer."  On

8 August 7, 2013, Dr. Lidge wrote that petitioner's thought stream was "well connected."  These

9 records clearly demonstrate that petitioner's depression was not so severe that it prevented

10 petitioner from filing a timely federal habeas petition.  See, e.g., Yeh v. Martel, 751 F.3d 1075,

11 1078 (9th Cir. 2014) (although petitioner had history of mental illness, it was not severe enough

12 to cause his delay because he repeatedly "sought administrative and judicial remedies, and

13 throughout these proceedings showed an awareness of basic legal concepts").

14    While petitioner's depression may have been sufficiently severe to interfere with his

15 ability to prepare a habeas petition from the date his grandmother died, i.e., October 22, 2012, to

16 when he first reported feeling better after having been prescribed Zoloft, i.e., December 1, 2012,

17 petitioner did not act diligently in pursuing his claims.  As discussed above, he did not file his

18 first state habeas until August 7, 2013, i.e., approximately 8 months after the medical records

19 demonstrate that his depression was adequately managed.

20    As discussed above, in January 2014, petitioner stopped taking Zoloft because it hurt his

21 stomach, and he had transitioned to Remeron by March 2014.  However, petitioner filed his

22 habeas corpus petition in the California Supreme Court on February 8, 2014, during this transition

23 period.  For this reason, the undersigned does not find that petitioner's depression during the time

24 he stopped taking Zoloft and transitioned to Remeron rendered him unable to file a timely federal

25 habeas petition.  Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (mental incompetence

26 did not cause untimeliness where petitioner filed several petitions in state court during time for

27 which he sought equitable tolling).

28 ////

12

1   Because the record is sufficiently developed for the undersigned to conclude that

2   petitioner's mental illness was not so severe as to cause the untimely habeas petition, petitioner is

3   not entitled to an evidentiary hearing.  Accordingly, for the reasons discussed above, the

4   undersigned finds that petitioner is not entitled to equitable tolling based on mental illness.

5   *Legal Property*

6   Lack of access to legal materials may provide a basis for equitable tolling.  See Lott v.

7   Mueller, 304 F.3d 918, 924 (9th Cir. 2002); Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009)

8   (finding that equitable tolling may apply where a complete lack of access to legal materials made

9   timely filing impossible).

10   Petitioner argues that he is entitled to equitable tolling on grounds that he was denied

11   access to his legal property.  However, petitioner's claims regarding when he was allegedly

12   denied access to his legal property are inconsistent.

13   In his further briefing, filed September 3, 2015, petitioner alleges that he was denied

14   access to his legal property from "latter 2013" through June 2014.  (ECF No. 21 at 7.)  Attached

15   as an exhibit to petitioner's briefing is a copy of the rules violation report, referred to above, dated

16   January 14, 2014.  (Id. at 16.)  This rules violation report charges petitioner with fighting.  (Id.)

17   Petitioner has handwritten at the bottom of this report, "This when the cops lost my property

18   (legal) when I moved from C yard to B yard & if they would have not lost my property (legal) I

19   would have made my time."  (Id.)

20   In his request for judicial notice filed September 3, 2015, petitioner states that in October

21   2013, all of his legal property was confiscated when he was moved from Facility C, Building 3 to

22   Facility B, Building 1.  (ECF No. 20 at 2.)  Petitioner states that CSP-Sac officials had possession

23   of all of his legal materials until they were reissued to petitioner in February 2014.  (Id.)  Later in

24   this briefing, petitioner states that his legal property was reissued to him in June 2014.  (Id. at 3.)

25   On October 5, 2015, petitioner filed a "supplemental opposition" containing further

26   briefing in support of equitable tolling based on denial of access to legal property.  (ECF No. 24.)

27   Attached to this briefing is what appears to be a property inventory list for petitioner's property

28   dated January 2, 2014.  (Id. at 5.)  Petitioner contends that this document shows that his property

1   was inventoried when he was moved from Facility C to Facility B.  (Id. at 3.)  Petitioner argues

2   that this document refers to his legal property as "miscellaneous paperwork."  (Id.)  Petitioner

3   argues that he did not receive his property back until June 2014.  (Id.)

4        On October 19, 2015, respondent lodged a document containing petitioner's bed

5   assignments.  (Respondent's Lodged Document 13.)  This document indicates that petitioner was

6   transferred from Facility C to Facility B on December 30, 2013.

7        For the following reasons, the undersigned finds that petitioner is not entitled to equitable

8   tolling on grounds that he was denied access to his legal property.  First, the statute of limitations

9   ran on September 23, 2013.  The earliest date petitioner alleges he was denied access to his legal

10  property was October 2013.  As noted by respondent in their further briefing, petitioner does not

11  allege that he was denied access to his legal property until after the statute of limitations had run.

12  Therefore, petitioner's alleged denial of access to his legal property did not prevent him from

13  filing a timely federal habeas petition.

14       Assuming petitioner is entitled to statutory tolling for the entire time his state habeas

15  petitions were pending, i.e., from August 7, 2013, to May 4, 2014, petitioner has not

16  demonstrated that he is entitled to equitable tolling on grounds that he was denied access to his

17  legal property.  Petitioner filed his habeas corpus petition in the California Supreme Court on

18  February 26, 2014, i.e., a time during which he alleges he did not have access to his legal

19  property.  Petitioner's ability to file this petition belies his claim that he was denied access to his

20  legal property.  Additionally, the claims raised in the instant petition are the same as those raised

21  in the petition filed in the California Supreme Court.  See ECF 1 (original petition); respondent's

22  lodged document 9 (habeas petition filed in the California Supreme Court).  Because petitioner

23  was able to prepare his petition filed in the California Supreme Court, he has not demonstrated

24  how his alleged denial of access to his legal property prevented him from preparing his federal

25  petition which contained virtually the same claims.

26       Petitioner's claims that he was denied access to his legal property are unsupported by any

27  evidence.  The Property Inventory List petitioner has provided does not demonstrate that he was

28  denied access to his legal property.  Petitioner also has failed to demonstrate that he made any

1   attempt to obtain the allegedly missing legal property, such as filing a grievance.  As discussed

2   above, petitioner's ability to file his habeas petition in the California Supreme Court during the

3   time he was allegedly denied access to his legal property belies his claim that he was denied

4   access to his legal property.  For these reasons, the undersigned finds that petitioner is not entitled

5   to equitable tolling on this ground.  See Trenkler v. United States, 268 F.3d 16, 25 (1st Cir. 2001)

6   (conclusory assertions rarely suffice to meet the burden of demonstrating entitlement to equitable

7   tolling); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (denying equitable tolling when

8   petitioner "provided no specificity regarding the alleged lack of access and the steps he took to

9   diligently pursue his federal claims"); Williams v. Dexter, 649 F.Supp.2d 1055, 1061–62 (C.D.

10  Cal. 2009) (inmate not entitled to equitable tolling when such "claim is ... unsupported by

11  competent evidence and is grossly conclusory").

12        Finally, the undersigned observes that in his original opposition, petitioner generally

13  claimed that he was entitled to equitable tolling because he was housed in ad seg.  Petitioner's

14  supplemental briefing does not specifically address when petitioner was placed in ad seg.

15  However, the bed list provided by respondent indicates that petitioner was in "short term

16  restricted housing" on June 1, 2015, to June 3, 2015.  (Respondent's Lodged Document.)

17  Petitioner was also in the security housing unit for one day on June 9, 2013.  (Id.)  Based on this

18  document, the undersigned finds that any claim by petitioner that he is entitled to equitable tolling

19  on grounds that he was housed in ad seg is unsupported by the record.

20  Conclusion

21        For the reasons discussed above, the undersigned finds that this action is barred by the

22  statute of limitations.

23        On November 10, 2015, petitioner filed a motion for an extension of time to file a reply to

24  respondent's supplemental briefing.  (ECF No. 29.)  Because no further briefing is required, this

25  motion for extension of time is denied.

26        Accordingly, IT IS HEREBY ORDERED that petitioner's motion for an extension of time

27  (ECF No. 29) is denied;

28  ////

1    IT IS HEREBY RECOMMENDED that respondent's motion to dismiss (ECF No. 13) be

2    granted.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

8    he shall also address whether a certificate of appealability should issue and, if so, why and as to

9    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

10   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

11   2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after

12   service of the objections.  The parties are advised that failure to file objections within the

13   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

14   F.2d 1153 (9th Cir. 1991).

15   Dated:  December 28, 2015

16

17   KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

18

19
     Lee1667.157
20

21

22

23

24

25

26

27

28

16